The decision of the lower Court was affirmed on March 23rd, 1871, in the following opinion by
Sharswood, J.
The first and fourth assignments of error raise the same question and may be considered together. The action below was by the widow and children of John C. Smith, to recover damages for his death, occasioned, as alleged, by the negligence of the servants of the defendants. He was killed by being struck by a locomotive at a place called Dunnings Station, where a public road crosses the railroad of the defendant at grade. A map was laid before the jury, with accurate measurements of distances from all points, together with oral testimony as to the character of the place, the obstruction to seeing, and all the circumstances bearing upon the question of what care was due on the part of the officers of the railroad, and what on the part of the persons crossing at that point. The court were asked by the defendants below to say, that if the jury believed that the bell was rung on the locomotive as it approached, and the rate of speed did not exceed fifteen miles per hour, the defendants could not be held to have been negligent and the plaintiffs could not recover. The learned judge in answer instructed the jury that if they found the facts as stated, and that the rate ot fifteen miles was not, under the circumstances, an unreasonable speed, the plaintiffs could not recover. It certainly could not be assumed a matter of law that fifteen miles an hour was a reasonable rate of speed. That, however, the point required to justify its affirmation simpliciter, and that has been the contention here. All that this or any court has ever said, has been, that when the law lays down a clear and certain rule of duty, a violation of that rule is not merely evi *91 derice of negligence, but negligence itself per se. No rule prescribes the rate of speed on a railroad compatible with the safety of the public. A celebrated engineer once gave it as his opinion that it made no difference, for an accident would be followed by certain death, whether the speed was great or small. But experience has shown that the retention of the power of arresting the engine — within a reasonable distauce — which depends of course upon the speed or momentum, is a great safeguard against fatal accidents. Hence, it is agreed, that when a train approaches a public crossing at a populous place — such as Dunning Station appears to have been — it is a proper and necessary precaution to hold up and moderate the speed, so that by the use of the brakes and reversing the engine, the train may be stopped in time. It certainly was for the jury to say, in view of the character of the place, and all the circumstances and surroundings, what that degree of speed was which'was not unreasonable.
The second assignment of error is, that the court erred negativing the defendants tenth point. Had that point been affirmed as put, the jury would have been instructed that travelers on foot crossing a railroad on a public road on grade, can never recover damages of the railroad company. For if the pedestrian has full control of his own movements, and it is his duty so to regulate late his movements as to avoid being struck by a locomotive or cars,'and if failure so to regulate his movements is negligence, what else remains to inquire but whether the sufferer was on foot. It is enough to state this proposition. Conceding what is well settled, that it is the duty of a person crossing a railroad to stop and look both ways, the obstructions to view and the rate of' speed may be such as to make such precaution unavailing. According to the evidence the deceased standing on the side of the road fifty-six feet from where he was killed, could see the engine one hundred and twenty-eight feet east, and at twenty-five miles an hour that space would be passed over in three seconds and six-tenths of a second. But supposing him to advance still more— thirty-five feet from the track — he could see up the road four hundred and seventy feet, and at the same rate that space could be passed over in thirteen seconds and two-tenths. A man finding a train rushing upon him at a frightful rate at so short a distance cannot be expected to retain his presence of mind, nor will the *92 involuntary mistake of running the wrong way under such cir-stances be imputed to him as negligence per se. The learned judge was asked to lay down a proposition in the abstract, without reference to the circumstances of the case, which was entirely too broad, and which was therefore properly declined.
The third assignment of error is in negativing the defendants eleventh point. But this point was not, as it should have been, hypothetical. It assumed certain facts as undisputed under the evidence, which-were not so, but which depended upon the oral testimony of several witnesses, to be compared and weighed by the jury in connection with all the circumstances of the ease. It would have been a manifest usurpation by the court of the province of the jury to have affirmed the point-as presented.
Judgment affirmed.